2006 OK CIV APP 101

John F. THAXTON, II and Annette Thaxton, Plaintiffs/Appellants,

v.

BENEFICIAL MORTGAGE CO. OF OKLAHOMA and Beneficial Oklahoma, Inc., Defendants/Appellees.

No. 103,080.

Court of Civil Appeals of Oklahoma, Division No. 4.

Aug. 1, 2006.

Timothy C. Janak, Tulsa, OK, for Plaintiffs/Appellants.

Dan M. Peters, Fuller, Tubb, Pomeroy & Stokes, P.C., Oklahoma City, OK, for Defendants/Appellees.

Opinion by DOUG GABBARD II, Presiding Judge.

¶ 1 Plaintiffs, John F. Thaxton II and Annette Thaxton, appeal an order of summary judgment granted in favor of Defendants, Beneficial Mortgage Co. (BMC) and Beneficial Oklahoma, Inc. (BOI). For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

### FACTS

¶ 2 In July 1994, Dennis and Janet Bullock granted BMC a first mortgage on their real property to secure the payment of their loan with BOI. In May 1998, they granted BMC a second mortgage on their real property to secure the payment of another loan with BOI. In May 1999, they sold the real property to Plaintiffs. As part of this sales transac-

tion, Guaranty Abstract Co. obtained loan payoff information from BOI, paid off the balance of the mortgages, and requested releases, notifying BOI that, under Oklahoma law, it was required to release the mortgages within 50 days or suffer substantial penalties. BOI replied by letter, stating that it would release the mortgages.

¶ 3 In September 2000, Plaintiffs refinanced and discovered that the Bullock mortgages had not been released. Buffalo Abstract Co., on behalf of Plaintiffs, sent a fax to BOI, again requesting the release of mortgages and noting that it had "been well over 90 days" since payment. BOI sent a written reply admitting that both mortgages had been paid in full and that they would be released.[1]

¶ 4 In November 2003, Plaintiffs again attempted to refinance. On November 7, 2003, they received a title opinion indicating that Defendants had still not released the mortgages of record. As a result, Plaintiffs allege that they were unable to refinance, defaulted on their note, and had a foreclosure action filed against them on December 4, 2003, by their mortgage holder, Green Tree Servicing. Shortly thereafter, Plaintiffs filed bankruptcy, and, on March 10, 2004, mailed a deed in lieu of foreclosure to Green Tree Servicing in an effort to settle the foreclosure action. However, Green Tree refused to accept the deeds because the mortgages had not been released. BOI eventually filed releases of both mortgages in the Office of the County Clerk of Tulsa County, Oklahoma, on April 23, 2004.

¶ 5 On July 29, 2004, Plaintiffs filed the present action against Defendants, setting forth two causes of action: *First*, violation of 46 O.S.2001 § 15, which requires mortgage holders to release their mortgage within 50 days of full payment, and, if not, then 10 days after written notice by the mortgagee, the mortgagee may file a civil action for damages equaling one percent of the principal debt not to exceed $100 per day for each day the release is not recorded; *Second*, the tort of intentional infliction of emotional distress. Plaintiffs sought damages in excess of $10,000 for violation of the statute, loss of equity in the property, damage to their credit, and severe emotional distress.

¶ 6 On October 6, 2005, after generally denying liability, Defendants filed a motion for summary judgment arguing three propositions: *First*, that Plaintiffs' cause of action under § 15 accrued on October 6, 2000, and was barred by the one-year statute of limitations set forth in 12 O.S. Supp.2005 § 95(4); *Second*, that Plaintiffs' suit failed to state a cause of action under § 15 because the notice given to Defendants was from a third party, not Plaintiff, and the second mortgage was never paid in full; *Third*, § 15 sets forth an exclusive remedy and, therefore, Plaintiffs' second cause of action for intentional infliction of emotional distress was barred.

¶ 7 Plaintiffs responded that the commencement of the limitations period was estopped by Defendants' conduct; that the notice given to Defendants was by Plaintiffs' agents; that the second mortgage was paid in full; and that damages for emotional distress and punitive conduct could be awarded.

¶ 8 On December 21, 2005, after reviewing the pleadings and listening to the argument of counsel, the trial court, without explaining its decision, granted summary judgment in favor of Defendants. Plaintiffs appeal.

## STANDARD OF REVIEW

¶ 9 Summary judgment is used to reach a final judgment where there is no dispute as

---

1. This letter was dated September 26, 2000, and directed to the attention of "Cathy" at Buffalo Land & Abstract Company Inc., was signed by Mary Jo Fennell, Sr. Account Executive at Beneficial, and read in pertinent part:

    This letter is to verify the following accounts have been paid in full and no longer have a balance owing as of 5/21/99.

    1. Mortgage executed by Dennis J. Bullock & Janet L. Bullock (H/W), in favor of Beneficial Mortgage Co. of Oklahoma, filed 7/11/94 in Vol. 5640 P. 1891 in the amount of $83,300.00

2. Mortgage executed by Dennis J. Bullock and Janet L. Bullock, H/W, in favor of Beneficial Oklahoma, Inc. filed 6/5/98 in Vol. # 6061, P. 1725 in the amount of $8984.32.

    Please feel free to call if there are any questions.

    The mortgage releases have been requested through our release dept. today.

    Thank you.

to any material fact, *Indiana Nat'l Bank v. Dep't of Human Servs.*, 1993 OK 101, ¶ 10, 857 P.2d 53, 59; and where one party is entitled to judgment as a matter of law. *Sellers v. Okla. Pub. Co.*, 1984 OK 11, ¶ 23, 687 P.2d 116, 120. We review a grant of summary judgment de novo. *Young v. Macy*, 2001 OK 4, ¶ 9, 21 P.3d 44, 47. Summary judgment on a limitations defense is appropriate where the evidence is sufficient to support a finding of fact of the time-bar and where the evidence establishes there is no dispute as to when the limitation period began to run. *MBA Commercial Const. v. Roy J. Hannaford Co.*, 1991 OK 87, ¶ 10, 818 P.2d 469, 472–73.

## ANALYSIS

■ ¶ 10 In their motion for summary judgment, Defendants first asserted that Plaintiffs' lawsuit was barred by the limitations period set forth in 12 O.S. Supp.2005 § 95(4), which provides for a one-year limitations period for a cause of action based upon "a statute for penalty or forfeiture."

¶ 11 Plaintiffs' first cause of action is based upon 46 O.S.2001 § 15, which provides:

A. Any mortgage on real estate shall be released by the holder of any such mortgage within fifty (50) days of the payment of the debt secured by the mortgage and the holder of the mortgage shall file the release of the mortgage with the county clerk where the mortgage is recorded. If, at the end of the fifty-day period, the holder has failed to release the mortgage, the mortgagor may at any time request in writing the holder of the mortgage to release the mortgage and the holder of the mortgage shall have ten (10) days from the date of the request to release such mortgage. If the holder of the mortgage fails to release the mortgage by the end of such ten-day period, he shall then forfeit and pay to the mortgagor a penalty of one percent (1%) of the principal debt not to exceed One Hundred Dollars ($100.00) per day each day the release is not recorded after the ten-day period has expired and

the penalty shall be recovered in a civil action in any court having jurisdiction thereof, but the request for the release shall be in writing and describe the mortgage and premises with reasonable certainty. Provided that, the total penalty shall not exceed one hundred percent (100%) of the total principal debt.

B. For purposes of this section, "mortgagor" shall include any subsequent purchaser of the mortgaged real estate.

This statute has been held to be a penal statute that must be strictly construed. *Walker v. Dugger*, 1962 OK 88, ¶ 13, 371 P.2d 910, 913; *Walker v. Duncan*, 1970 OK 86, ¶ 24, 469 P.2d 647, 650. Accordingly, the one-year statute of limitations set forth in 12 O.S. Supp.2005 § 95(4) is applicable. *Nay v. First Fin. Bank*, 2003 OK CIV APP 91, ¶ 12, 79 P.3d 1124, 1128.

■ ¶ 12 Statute of limitation periods begin to run when a cause of action accrues, that is, when a cause of action comes into existence. *Sherwood Forest No. 2 Corp. v. City of Norman*, 1980 OK 191, ¶ 10, 632 P.2d 368, 370; *Stephens v. General Motors Corp.*, 1995 OK 114, ¶ 8, 905 P.2d 797, 799. The cause of action set forth in 46 O.S.2001 § 15 accrues 10 days after written demand upon the mortgage holder, which demand cannot be given until the passage of 50 days after full payment. In this case, the evidentiary material indicates that both mortgages were paid no later than May 21, 1999, and that the first written demand thereafter was made on September 25, 2000.[2] Therefore, we agree with Defendants that the limitations period expired on October 6, 2001.

¶ 13 Nevertheless, Plaintiffs assert that Defendants' conduct estops them from asserting limitations as a bar. In response, Defendants note that penal statutes, such as this one, are strictly construed, and applicable statutes of limitation are not usually tolled, citing *Cummings v. Board Of Education of Oklahoma City*, 1942 OK 154, 125 P.2d 989.

---

2. The issues of whether Buffalo Land Abstract made the demand on Plaintiffs' behalf and whether the second mortgage was paid in full are addressed in Defendants' second proposition below.

¶ 14 In *Cummings,* the Supreme Court addressed the question of whether the predecessor to § 95(4) could be tolled by the doctrine of concealment or discovery. The penal statutes involved, §§ 6830–6832, O.S.1931 (70 O.S.1931 §§ 131–33), provided for the collection of fines and compensatory damages from one who wrongfully expended school district funds. The Court noted that § 95(3) specifically provided that the referenced causes of action "shall not be deemed to have accrued until the discovery of the fraud," and that enumeration of this specific exception excluded its application to all other subsections, including § 95(4) by implication. Noting that it had not always followed this rule, the Court stated:

> While the courts recognize penalties of a civil character and enforce them pursuant to legislative mandate, they do not regard them as rights which are favored by the law. Insofar as they confer benefits on an injured party, they are in the nature of a gratuity. When based solely upon statute, these are in a sense an act of legislative grace. Viewed from the wrongdoer's standpoint, they operate as punishment. Thus statutes creating penalties are subject to strict construction.
>
> While the courts may and do "strain a point" to toll the statute of limitations in order to protect a person whose rights would be injuriously affected by its literal application, they will not do so to enable an individual to enact a "pound of flesh" under a penal statute. Similarly, in criminal actions, concealment does not suspend the statute. *Synnott v. State,* 38 Okla. Cr. 281, 260 P. 517. It has been aptly said that "The time within which an action may be brought to recover a penalty is of the essence of the cause of action." 23 Am Jur. 663.

*Id.* at ¶ 22–23, 125 P.2d at 993.

The Court found that belated discovery or concealment did not toll § 95(4) as to the penal portions of the statute, but it did toll § 95(4) as to that portion of the statute which allowed compensatory damages. The Court reversed that part of the judgment in excess of actual damages sustained.

¶ 15 We find *Cummings* distinguishable for a simple reason: Plaintiffs do not assert that the statute of limitations was *tolled;* they allege that the Defendants should not be allowed to assert limitations as a defense due to *equitable estoppel.* The difference is important. In 51 Am.Jur.2d *Limitation of Actions* § 381 (2000), it is stated:

> Equitable estoppel to assert the statute of limitations should be distinguished from equitable tolling, which extends the statute of limitations if the plaintiff did not have and could not with due diligence obtain the information necessary for bringing suit within the limitations period. The doctrine of 'equitable estoppel,' in contrast, focuses on the defendant's conduct and presupposes that the plaintiff knew of the facts underlying the cause of action, but delayed filing suit because of the defendant's conduct.

Unlike the plaintiffs in *Cummings,* Plaintiffs do not argue that Defendants concealed the cause of action, or that they were unable to discover the cause of action with due diligence. To the contrary, they knew that a cause of action existed under § 15, but allege that they delayed filing suit because of justifiable reliance upon Defendants' representations that Defendants would file the mortgage releases. They are not asking the court to find that the limitations period was suspended; they are merely asking the court to find that the Defendants are estopped from asserting it as an affirmative defense.

¶ 16 The facts presented by this case are remarkably similar to Oklahoma cases recognizing equitable estoppel where a plaintiff delays filing suit due to the wrongdoer's promise to pay a debt or claim. For example, in *Douglass v. Douglass,* 1947 OK 385, 188 P.2d 221, a father sold his son land relying on the son's promise that he would execute a note and mortgage thereon. The son failed to do so but continued, over a period of several years, to promise that he would. Relying upon these promises, the father allowed the limitations period to expire. After expiration, the son advised the father that he intended to keep the land without paying. The father sued and the trial court dismissed the action as barred.

The Oklahoma Supreme Court reversed, stating, in part:

> In order to estop a person from pleading the statute of limitations it is not necessary for such person to agree not to urge it, but it is sufficient if his conduct or promises are such as are naturally calculated to and do "induce plaintiff into a belief that his claim would be adjusted if he did not sue." Wood on Limitations, § 53c, note 52.

> "The debtor may be estopped from pleading the statute if he induces the creditor to let the period go by in which suit may be brought and his inducement is of such character as to make it iniquitous to permit the statute to be pleaded as a defense." *Dickson v. Slater Steel & Rig Co.*, 138 Okla. 238, 280 P. 817.

*Id.* at ¶ 12, 188 P.2d at 224.

¶ 17 The important elements of estoppel are Defendants' conduct and Plaintiffs' justifiable reliance thereon to their prejudice. *See Phillips Petroleum Co. v. U.S. Fid. & Guar. Co.*, 1968 OK 23, 442 P.2d 303. In the present case, the evidentiary material indicates that Buffalo Land Abstract Co. faxed Defendants a request to release the mortgages on September 25, 2000, and noted on the request that it "has been well over 90 days" (presumably, since payment of the mortgages). Defendants immediately responded by letter verifying that the mortgages had been paid and that the "mortgage releases have been requested through our release dept. today." In addition, Plaintiffs took no further action until almost two years later when they discovered, in connection with another attempted refinancing, that the releases had never been filed.

¶ 18 We find that a substantial controversy exists as to whether Plaintiffs justifiably relied upon Defendants' promise to release the mortgages, and that this is a question of fact to be resolved by the trial court or a jury. *See Empire Gas & Fuel Co. v. Lindersmith,* 1928 OK 371, 268 P. 218. If true, Defendants are equitably estopped from asserting the passage of the statute of limitations. For this reason, the trial court's order granting summary judgment on this issue must be reversed.

¶ 19 In Defendants' second proposition of error, they assert that Plaintiffs' suit fails to state a cause of action under 46 O.S.2001 § 15 because the notice given to Defendants was from a third party (Buffalo Land Abstract Co.), not Plaintiffs, and that the second mortgage was never fully paid. We find both arguments frivolous.

¶ 20 Regarding the first argument, it is clear that Buffalo Land Abstract (and, previously, Guaranty Abstract) was acting as Plaintiffs' closing agent, and requested the payoff balance and mortgage releases as Plaintiffs' agent in order to assist Plaintiffs in securing the refinance loan. It is also obvious that Defendants understood this agency since it immediately forwarded confidential information regarding Plaintiffs' loan to Buffalo Land Abstract.

¶ 21 Regarding the second argument, we note that Defendants have consistently admitted that both notes were fully paid. Defendants did so in the May 21, 1999, letter to Guaranty Abstract Co., attached to Plaintiffs' petition as Exhibit 4; and in the September 26, 2000, letter to Buffalo Land & Abstract Co., attached to Plaintiffs' petition as Exhibit 7. Furthermore, on April 23, 2004, they released both mortgages, which releases are attached to Plaintiffs' petition as Exhibit 11.

¶ 22 In their third proposition, Defendants argue that 46 O.S.2001 § 15 sets forth an exclusive remedy and, therefore, Plaintiffs' second cause of action for intentional infliction of emotional distress is barred. We agree. In *Pittsburg Mortgage Inv. Co. v. Cook*, 1931 OK 447, 1 P.2d 665, the Supreme Court stated that the remedy and measure of damages set forth in the predecessor to § 15 is exclusive.[3] It provides for a fixed measure

---

3. Section 7642, C.O.S.1921 provided:

   If the holder of any mortgage on real estate shall neglect or refuse for ten days after being requested by the mortgagor, his agent or attorney, to release such mortgage, such holder of a mortgage shall forfeit and pay to the mortgagor one per centum of the principal debt per diem from and after the expiration of such ten days to be recovered in a civil action in any court having jurisdiction thereof, but such request must be in writing and describe the mortgage and premises with reasonable cer-

of damages to both punish and compensate, and it does not allow any additional recovery for actual damages. *Id.* at ¶ 7, 1 P.2d at 666. For this reason, summary judgment was properly granted in favor of Defendants on Plaintiffs' second cause of action for intentional infliction of emotional distress.

## CONCLUSION

¶ 23 For the reasons set forth above, we reverse the summary judgment on Plaintiffs' first cause of action because a substantial controversy exists as to whether Defendants are equitably estopped from asserting the statute of limitations as an affirmative defense. However, we affirm the summary judgment on Plaintiffs' second cause of action since 46 O.S.2001 § 15 sets forth an exclusive remedy.

tainty and be accompanied by the expenses of

¶ 24 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.

REIF, J., concurs and RAPP, V.C.J., concurs in part and dissents in part.

RAPP, V.C.J., concurring in part, and dissenting in part:

¶ 1 I dissent only as to the Majority's decision affirming summary judgment on the second cause of action for Defendants and against Plaintiffs.

filing and recording such release.